# Chicago & Joliet Electric Railway Company v. Andrew F. Dice.

## Gen. No. 4,288.

1. SUDDEN STARTING OF CAR—*when, does not confer cause of action.* Where the claim is that the plaintiff was injured by the sudden starting of a car while he was about to alight, a recovery cannot be sustained where it does not appear that the plaintiff signaled the motorman, who was in charge of the car (it having then no conductor), to stop the car, and it does not appear that such motorman knew of the intention of plaintiff so to alight; and the act of leaving his seat, walking to the rear of the car and taking a position upon the steps cannot be deemed notice to such motorman of such intention.

Action on the case for personal injuries. Appeal from the Circuit Court of Will County; the Hon. JOHN SMALL, Judge, presiding. Heard in this court at the October term, 1903. Reversed. Opinion filed March 14, 1904.

E. Meers, for appellant.

A. F. Mather and J. W. D'Arcy, for appellee.

Mr. Justice Vickers delivered the opinion of the court.

This is an action on the case to recover for a personal injury received by appellee while alighting from an electric street car near Ruby street, in the city of Joliet. Appellee was a passenger on appellant's car, traveling north on Hickory street, to a point where Ruby street intersects Hickory, where appellee desired to leave the car to go to the place of his employment. The car on which appellee was riding was an ordinary street car with the seats running lengthwise and passageway in the center, and was in charge of a motorman and conductor until Division street switch was reached going north, where the conductor left the car and it proceeded north on Hickory street about nine blocks to Ruby street. There were ten or twelve passengers on the car. Marble street intersects Hickory one block south of Ruby street. After the car had passed Marble street, appellee and one Joseph Sullivan, both of whom desired to leave the car at Ruby street, arose and walked to the rear end of the car and appellee took his position on the lower step on the right hand side of the car and Sullivan a similar position on the left hand side of the car; appellee held the guard rail with his left hand and held his dinner pail in his right hand. The evidence tends to prove that after the car had passed Marble street, the speed was somewhat slackened as it approached the intersection of Ruby street and that while the car was still in motion, appellee stepped or jumped off the car, staggered ten or twelve feet and finally fell upon the ground causing the injuries complained of.

It is contended by appellee that just at the moment when he was leaving the car, the speed of the car was suddenly increased and the lurch of the car tripped him and caused him to fall. It is shown that just beyond the intersection of Ruby street, there is a sharp curve in Hickory street and also a switch near the north crossing of Ruby street.

The negligence complained of is, the giving of the car a sudden and increased speed without warning to the plaint-iff who was about to alight from the car, of which the motorman had notice; also in negligently operating the car without a conductor. A trial was had, resulting in a verdict for the appellee for $700. A motion for a new trial was overruled and judgment rendered on the verdict, from which appellant appeals and assigns numerous errors upon the record, among which are that the court erred in refusing to take the case from the jury at the close of all the evidence.

The evidence in the record wholly fails to show that the motorman in charge of this car had any notice or warning whatever that appellee intended to leave the car at Ruby street. There is not the slightest proof that appellee rang the bell or by any other sign or token indicated to the motorman his purpose to get off at Ruby street. His theory seems to be that because the speed of the car slackened somewhat after passing Marble street and that because he had been in the habit of getting off at Ruby street, that the motorman understood his wishes and was slackening the speed with the intention of stopping the car for his convenience. On the other hand, it is shown that the motorman had no knowledge whatever that appellee was on the car, much less of the place at which he desired to get off.

It is contended that the fact that appellee and Sullivan arose from their seats after passing Marble street and walked toward the rear of the car would have been observed by the motorman if he had been in the discharge of his duty to his passengers, and should have been understood by him as notice of their intention to get off. This contention cannot be sustained. It cannot be said that merely arising from his seat and walking to the rear of the car and taking a position upon the steps indicates anything more than a probable intention of the passenger to get off the car at some point near by. It is a matter of common observation that passengers on street cars frequently get up and walk to the rear of the car and stand on the platform for some

blocks before reaching the place where they expect to alight and it is likewise a matter of common observation that many passengers on streets cars ride for blocks standing on the steps and holding to the guard rails from choice or as a matter of convenience, and to hold that simply because a passenger happens to place himself in such a position, the company must thereby take notice not only that he wants to alight from the car but also the particular place where he desires to get off, would be imposing upon the street car company the necessity of stopping at every crossing in order to ascertain whether the person on the steps or rear platform desired to get off.

The street car in question was provided with a bell and bell rope which was in perfect order and could have been readily used by appellee to indicate to the motorman that he desired to have the car stop.   It is also known that it is the usual and ordinary practice of motormen of street cars to recognize any signal that the passenger may give of his desire to have the car stop, such as a wave of the hand, nod of the head or ringing of the bell, any of which, when used by the passenger and recognized by the operators of the car, would be sufficient notice to charge the company to stop the car, but it has never been held so far as we are advised, that merely arising from one's seat and passing to the rear of the car must be interpreted by the street car company as notice of the passenger's intention to get off at the next succeeding street crossing.   It is undoubtedly the duty of those having control of street cars used by the public for travel on public streets to bring such cars to a stop at such places as are convenient and necessary for the purpose of receiving and discharging passengers, but this duty does not require that the car shall be brought to a stop at every street crossing regardless of whether there is any person to get on or off the car.   Meixner v. Cicero & Proviso St. Ry. Co., 160 Ill. 320.

It is contended that it was the duty of the motorman to look back through his window into the car to see whether or not any persons desired to alight from the car.   While

it is true that the persons in charge of a street car used for passenger service are required to exercise the highest degree of care for the safety and comfort of their passengers, yet it is also true that the operation of electric cars in populous cities over the public streets is attended with great danger to the public who may be lawfully using said streets, and to hold that it was the duty of the motorman to look back into the car to observe what his passengers might be doing, would conflict with his duty to the public and his passengers to keep a lookout ahead of his car to avoid colliding with persons and teams or other obstructions that might be in front of his car. If appellee had been run into while lawfully crossing the street in front of the car and it was shown that at the time of the collision the motorman, who was the only person in charge of the car and had control of it, was looking in the opposite direction to which the car was going, we would regard it as a much better case for appellee than is made by the proofs here.

Conceding the contention of appellee that the car gave a sudden lurch about the time that he was preparing to leave it, yet we are not prepared to hold that this fact in and of itself is proof of negligence unless it is also accompanied with proofs of notice to the company that appellee was on the steps for the purpose of getting off the car.

We fail to find in this record any evidence of negligence on the part of the appellant and hold that under the facts in this case the appellee cannot recover, and make the following finding of facts:

We find that the proofs do not establish any of the charges of negligence in either count of appellee's declaration.

*Reversed.*